```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

YURY GOKHBERG, DAVID JAFFE, ALIZA    :
OFIRA-OKANON, MARC SELIGMAN,         :
RONALD SOHAN, and KAREN FLANAGAN,    :
                                     :
          Plaintiffs,                :
                                     :    CIVIL ACTION
     v.                              :
                                     :    NO. 11-CV-1884
SOVEREIGN BANCORP, INC.,             :
SOVEREIGN BANK, BANCO                :
SANTANDER, S.A. and SANTANDER        :
HOLDINGS USA, INC.,                  :
                                     :
          Defendants.                :
```

## MEMORANDUM AND ORDER

**Joyner, C.J.**                                    **August 31, 2011**

Before this Court are Defendants' Motion to Compel Arbitration (ECF No. 2), Plaintiffs' Response in opposition thereto (ECF No. 12), Defendants' Reply in further support thereof (ECF No. 16), Defendants' Notice of Supplemental Authority (ECF No. 22), and Plaintiffs' Response thereto (ECF No. 24).  For the reasons set forth in this Memorandum, the Defendants' Motion is GRANTED.

## I.  BACKGROUND

This case comes to the Court from the Eastern District of New York.  Plaintiffs--current and former employees of Defendants--allege Defendants contravened the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL") by

failing to pay minimum wage and overtime compensation and failing to maintain payroll records.  (Am. Compl. ¶¶ 51, 59, 64.)  Defendants seek to enforce the arbitration clause contained in the employment contracts, deemed Mortgage Development Officer Agreements ("MDOA"), executed by the parties.  Plaintiffs Gokhberg, Ofira-Okanon, Flanagan and Sohan signed an agreement providing:

> Any controversy or claim arising out of the [Mortgage Development Officer's] employment or the termination thereof shall be resolved through final and binding arbitration in accordance with the National Rules for the Resolution of Employment Disputes or other applicable rules of the American Arbitration Association then in effect.  Such controversies and claims include, but are not limited to, those arising under this Agreement and those arising under any federal, state, or local statute relating to employment
> . . . .

(Defs.' Mot. Compel Arbitration Exs. 2-5 at ¶ 5.04.)  Plaintiffs Jaffe and Seligman signed a different draft of the MDOA but the relevant language is identical.  (Defs.' Mot. Compel Arbitration Exs. 6-7 at ¶ 5.05.)

## II.  DISCUSSION

The Federal Arbitration Act "establishes a strong federal policy in favor of the resolution of disputes through arbitration."  Nino v. Jewelry Exch., Inc., 609 F.3d 191, 200 (3d Cir. 2010) (internal quotation marks omitted).  Arbitration agreements "are enforceable to the same extent as other contracts."  Id. (quoting Alexander v. Anthony Int'l, L.P., 341

2

F.3d 256, 263 (3d Cir. 2003)).  If the Court finds that the agreement is valid and enforceable, Defendants are "entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration."  Alexander, 341 F.3d at 263 (citing 9 U.S.C. §§ 3-4; Seus v. John Nuveen & Co., 146 F.3d 175, 179 (3d Cir. 1998)).

To determine whether a party may be compelled to arbitrate, the Court must determine: "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement."  Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 527 (3d Cir. 2009).  As to the latter inquiry, the parties do not contest that the dispute falls within the scope of the arbitration agreement in each Plaintiff's respective MDOA.  Plaintiffs state their claims for unpaid wages pursuant to the FLSA and NYLL.  This is unequivocally a case or controversy "arising out of . . . employment" and "under [] federal, state, or local statute[s] relating to employment."  (Defs.' Mot. Compel Arbitration Exs. 2-5 at ¶ 5.04, Exs. 6-7 at ¶ 5.05.)

Plaintiffs challenge the validity of the arbitration agreement, contending that it is unconscionable.  An otherwise valid and enforceable agreement may be revoked "upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2.  Defendants' motion will be granted "only where there is no genuine issue of fact concerning the formation of the agreement to arbitrate"; a standard familiar as the same standard used to resolve summary judgment motions, <u>Kirleis v. Dickie, McCamey & Chilcote, P.C.</u>, 560 F.3d 156, 159 & n.3 (3d Cir. 2009).  Plaintiffs are "entitled to the benefit of all reasonable doubts and inferences that may arise."  <u>Id.</u> at 159 (internal quotation marks omitted).

"A federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA."  <u>Quilloin v. Tenet Healthsystem Philadelphia, Inc.</u>, 763 F. Supp. 2d 707, 724 (E.D. Pa. 2011) (quoting <u>Blair v. Scott Specialty Gases</u>, 283 F.3d 595, 603 (3d Cir. 2002)).  The parties agree that Pennsylvania law applies in this case.  (<u>See, e.g.</u>, Pls.' Opp'n Mem. 1-2; Defs.' Reply Mem. 2-4.)  Under Pennsylvania law, a contract is unconscionable if there is a "lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it."  <u>Salley v. Option One Mortg. Corp.</u>, 925 A.2d 115, 119 (Pa. 2007).  For the contract to be unconscionable it must be both procedurally and substantively unconscionable.  <u>See, e.g.</u>, <u>Harris v. Green Tree Fin. Corp.</u>, 183 F.3d 173, 181 (3d Cir. 1999); <u>Quilloin</u>, 763 F. Supp. 2d at 724; <u>Salley</u>, 925 A.2d at 119.  Procedural

unconscionability concerns: (a) the process leading to the agreement, and (b) the form and language of the agreement. See Zimmer v. Cooperneff Advisors, Inc., 523 F.3d 224, 228 (3d Cir. 2008) (citing Harris, 183 F.3d at 181). Substantive unconscionability arises when the agreement "unreasonably favors the party asserting it." Id. (quoting Salley, 925 A.2d at 119).

Plaintiffs argue the arbitration agreement is procedurally unconscionable because they had no meaningful choice in accepting the agreement. Plaintiffs contend Defendants had "significantly greater bargaining power" and the arbitration agreements were presented on a "take-it-or-leave-it basis." (Pls.' Opp'n Mem. 3.) Unequal bargaining power is insufficient on its own to find the arbitration agreement procedurally unconscionable. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991); Seus, 146 F.3d at 184. An adhesion contract is not unconscionable per se. See 146 F.3d at 184.

Plaintiffs rely entirely on Hopkins v. New Day Financial, 643 F. Supp. 2d 704 (E.D. Pa. 2009), to support their claim of procedural unconscionability. In that case, several account executives sued their employer for allegedly failing to pay overtime compensation in violation of the FLSA. See id. at 708. The employer, like Defendants in this case, moved to enforce an arbitration agreement contained in the employees' signed employment contracts and the employees asserted the contract was

unconscionable.  See id.

The Hopkins court relied on several facts to infer the arbitration was procedurally unconscionable.  First, the employees were given the contract to sign on or after their first day of employment, see id. 717, whereas Plaintiffs were sent a copy of the MDOA at least a week--and in some cases three weeks--in advance.  (See Defs.' Reply Mem. Decl. of Cecil Morgan ¶¶ 2-8 & Exs. A-F.)  Each Plaintiff received the MDOA appended to a letter confirming Defendants' offer of employment and designating a prospective start date.  See id.  Thus, Plaintiffs, save for Mr. Seligman, had several days to review the MDOA and the arbitration agreement before they commenced their employment with Defendants.[1]  This is in sharp contrast to the circumstances in Hopkins where employees were placed in a room, presented with a contract and given no more than an hour--and as little as five minutes in one case--to review and sign the agreement.

Second, the employees in Hopkins were under the impression their employment, which had already begun, would be terminated if they failed to sign the agreement.  Hopkins, 643 F. Supp. 2d at

---

[1] A discrepancy appears in the facts submitted by Defendants.  According to Cecil Morgan's declaration, Plaintiff Marc Seligman's employment began on October 3, 2008 and his offer letter was mailed to him the same day. (Defs.' Reply Mem. Decl. of Cecil Morgan ¶¶ 6, 8.)  In contrast, Mr. Seligman's offer letter states that he was to begin employment on October 20, 2008.  (Defs.' Reply Mem. Ex. E.)  Because all factual doubts must be resolved in favor of Plaintiffs, the Court assumes that Mr. Seligman began employment on October 3, 2008 and not October 20, 2008.  Therefore, the Court must infer Mr. Seligman, like the employees in Hopkins, did not receive a copy of the MDOA prior to beginning his employment.

718. In this case, signing the MDOA was made an express condition of employment; however, Plaintiffs were fully apprised of this condition before they began their employment.

Third, in Hopkins, the employees "felt as though they could not ask questions." Id. at 718. In one instance, an employee asked about the arbitration agreement and the human resource director responded that she did not know what "arbitration" meant and urged the employee to sign anyway. See id. at 713. Plaintiffs do not allege that they were hindered in any way from inquiring about the arbitration agreement or seeking an explanation of its meaning. The letters sent to Defendants stated, "If you need clarification of any items mentioned above, please feel free to call . . ." and listed a number to a human resources officer. (See Defs.' Reply Mem. Exs. A-F.)

Fourth, the plaintiffs in Hopkins were not given a copy of the agreement when they signed it and were not able to consult with counsel. 643 F. Supp. 2d at 718. In this case, a copy of the agreement was mailed to each Plaintiff's home and they were able to review it well in advance of signing it. Plaintiffs had ample time to consult legal counsel if they so desired. Although the Court presumes Plaintiff Seligman did not receive a copy of the MDOA prior to starting employment on October 3, 2008, he did not sign it until October 20, 2008. (Defs.' Mot. Compel Arbitration Ex. 7 at 4.) Thus Mr. Seligman had several days to

7

review the MDOA mailed to him and to consult legal counsel, like the other plaintiffs.  Contrary to Plaintiffs' assertions, their circumstances were not nearly as oppressive as those described in Hopkins.  Considering the totality of the facts, the Court is unconvinced that Plaintiffs lacked a meaningful choice in accepting the agreement.

The Court has reviewed all facts in the light most favorable to the plaintiffs but they have failed to provide a modicum of factual support for their allegations.  "Plaintiffs have the burden of proof to present facts which give rise to unconscionability."  Hopkins, 643 F. Supp. 2d at 716 (citing Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989)).  The burden is slight in the context of a motion to compel arbitration, especially in the case here, where discovery has not commenced.  See id. at 718 (holding that nonmovants could overcome a motion to compel arbitration because they "presented facts in support of their argument."); see also Williams, 891 F.2d at 460 ("a nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings." (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) and Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986))).  Plaintiffs fail to allege sufficient facts to support their assertion of an unconscionable agreement.

Plaintiffs executed a valid and enforceable arbitration agreement when they signed their employment contracts.  Although the contracts were essentially offered on a "take-it-or-leave-it" basis, Plaintiffs had at least a week to review the agreement at their leisure before formally accepting Defendants' employment offer.  Plaintiffs were given a copy of the arbitration agreement and they were not denied the opportunity to seek legal advice before signing the agreement.  Plaintiffs were not inhibited from asking Defendants about the meaning of the agreement; to the contrary, Defendants encouraged Plaintiffs to ask questions about the contract mailed to them.  For the aforementioned reasons, the Court finds that the arbitration agreement executed by the parties is not procedurally unconscionable.

Because the Court finds that the arbitration agreement is not procedurally unconscionable, Defendants' motion must be granted even if Plaintiff prevails on the conjunctive issue of substantive unconscionability.  Therefore, the Court "need not reach the question of substantive unconscionability." Progressive Pipeline Mgmt., LLC v. N. Abbonizio Contractors, Inc., 2011 WL 1343031 at *7 (E.D. Pa. Apr. 7, 2011); see also Zimmer, 523 F.3d at 230 ("Because we have concluded that the arbitration agreement here was not procedurally unconscionable . . . we need not decide whether the District Court's decision as to substantive unconscionability was correct.").

## **III.   CONCLUSION**

For the foregoing reasons, the Court grants the Motion to Compel Arbitration.